# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————

m 99-60395

———————

JOSE LUIS GONZALEZ-TORRES,
ALSO KNOWN AS JOSE LUIS GONZALEZ-SAUCEDO;
MARIA GONZALEZ-TORRES; EDWIN GONZALEZ-TORRES;
ENGELBERTH GONZALEZ-TORRES;
JOSE LUIS GONZALEZ-TORRES, JR.;
AND
CYNTHIA GONZALEZ-TORRES,

Petitioners,

VERSUS

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

———————————

Petition for Review of an Order of
the Board of Immigration Appeals

———————————

June 21, 2000


Before POLITZ, SMITH, and
DENNIS,Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jose Luis Gonzalez-Torres, his wife Maria Gonzalez-Torres, and their children Jose Luis, Jr., Engelberth, Edwin, and Cynthia ("petitioners"), petition for review of the denial of their applications for suspension of

deportation, arguing that retroactive application of the stop-time provision in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), section 304(a), violates their due process right to "fair notice and repose." Concluding that petitioners have no constitutional right to the discretionary suspension of deportation, we deny the petition for review and affirm.

## I.

In July 1991, petitioners, natives of Mexico, were ordered to show cause why they should not be deported. The show-cause orders stated that Maria, Jose Luis, Jr., Engelberth, and Edwin had entered the United States as non-immigrants on June 20, 1990,[1] that they were authorized to remain in the country until June 23, 1990, and that they had done so without authorization since that date. Cynthia's show-cause order stated that she had entered the country on July 1, 1985, and was authorized to remain until July 4, 1985. Petitioners conceded their deportability and were ordered to depart voluntarily by July 2, 1992.

In August 1992, petitioners filed applications for suspension of deportation and a motion to reopen their deportation proceeding. They asserted that they were of good moral character, that they had entered the country in 1985 and had been physically present in the country for seven years, and that they would suffer extreme hardship if deported. *See* 8 U.S.C. § 1254(a)(1) (West 1995) (requirements for suspension of deportation). The motion to reopen was granted, and a hearing was held on November 6, 1992.

At that hearing, the immigration judge ("IJ") found that the petitioners were of good moral character but that, despite their contention that they had entered the country in July 1985, there was no evidence demonstrating that the they had been in the United States before 1988. The IJ thus concluded that the petitioners failed to establish that they had been physically present in the United States for a period of seven years; the IJ also found that petitioners had not demonstrated that they would suffer extreme hardship if they were deported. Consequently, the IJ denied the applications for suspension of deportation and ordered that the petitioners be allowed to depart voluntarily by December 17, 1992.

Petitioners appealed to the Board of Immigration Appeals ("BIA"). In August 1996, while their appeal was pending, Maria Gonzalez-Torres and the four children filed a motion to reopen the deportation proceeding based on Jose Luis, Sr.'s, death in January 1996.

In March 1998, the BIA issued a notice requesting additional briefing based on the passage of the IIRIRA. Following additional briefing by the petitioners and the INS, the BIA, on May 17, 1999, denied the petitioners' motion to reopen the deportation proceedings and denied the appeal.

The BIA stated that the record reflected that all the family members except Cynthia had entered the United States on July 20, 1990; that on July 23, 1991, they had been served with an order to show cause and a notice of hearing; that Cynthia had entered the country on July 1, 1985; and that on July 29, 1991, she had been served with an order to show cause and a notice of hearing. The BIA concluded

---

[1] The deportation order indicated that the children entered the country on July 1, 1985.

that because "none of the respondents had accrued 7 years of continuous physical presence before the service of the Order to Show Cause and Notice of Hearing, none [was] eligible for suspension of deportation." *BIA Order* (May 17, 1999) (citing *Matter of Nolasco-Tofino*, Interim Decision 3385 (BIA 1999)). The BIA did not address the IJ's finding that none of the petitioners would suffer an extreme hardship if deported.

## II.

Under its transitional rules, IIRIRA § 309-(c)(4)(E) provides, in pertinent part, that "there shall be no appeal of any discretionary decision" with respect to the BIA's denial of a motion to suspend deportation. *See Moosa v. INS*, 171 F.3d 994, 1010-11 (5th Cir. 1999). In *Moosa*, we held that we have no jurisdiction to review the BIA's decision denying suspension based on the immigrant's failure to demonstrate extreme hardship.[2]

Here, however, the BIA did not base its denial of petitioners' motion on the IJ's determination that they had not established the extreme-hardship element. Instead, the BIA determined that petitioners had failed to prove another necessary element for eligibility for suspension of deportationSSthat they had accrued seven years' continuous presence in the United States. This determination is not a matter of agency discretion, but involves application of the law to factual determinations. It therefore is not precluded from judicial review by § 309(c)(4)(E). *See Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997).[3]

## III.

Petitioners challenge the application of the new stop-time rule in the IIRIRA to their deportation proceedings, arguing that § 309-(c)(5) cannot constitutionally be applied to them, because doing so would constitute a retroactive application of a law in violation of procedural due process. They do not argue that Congress did not intend that § 309(c)(5) would apply retroactively; instead, they assert that this provision is one that the Constitution prohibits from being applied retroactively even if Congress plainly mandated that it be applied retroactively. Thus, petitioners concede that there is no need to undergo the two-step analysis in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), for determining whether a law applies retroactively.

Petitioners rely, however, on another portion of *Landgraf* that states that "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Id.* at 306 (internal citations omitted). Accordingly, petitioners contend that their due process interest in "fair notice and repose" has been violated by the retroactive application of § 309(c)(5), which altered the conditions of their deportability

---

[2] *See id.* at 1012 ("We join our sister courts in holding that denials of suspension based on the INS § 244 element of 'extreme hardship' are discretionary decisions, which IIRIRA § 309(c) precludes us from reviewing.").

[3] *See also Moosa*, 171 F.3d at 1012, in which the court cited that portion of *Kalaw* that "found that the continuous physical presence element was a factual inquiry, rather than a discretionary decision, that was reviewed for substantial evidence; thus, § 309(c) did not divest the court of its jurisdiction."

after they had been served with the orders to show cause and had begun their deportation proceedings.

## A.

Before 1996, INA § 244(a) provided the Attorney General with discretion to grant suspension of deportation to an alien. To be eligible for this suspension, however, the alien had to satisfy several requirements, including that he be "physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application [for suspension of deportation]." 8 U.S.C. § 1254(a)(1). But unlike the situation under current IIRIRA § 304(a), the time an alien spent in deportation proceedings counted toward the physical presence requirement.

To expedite the removal of deportable aliens and to limit discretionary relief, Congress enacted the IIRIRA and repealed the suspension-of-deportation provision in INA § 244. Congress replaced the old provision with new INA § 240A, which provides for the "cancellation of removal." 8 U.S.C. § 1229b. Section 304(a) enacted a stop-time rule for determining an alien's eligibility for suspension of deportation or cancellation of removal, providing that "any period of continuous residence or continuous physical presence *shall be deemed to end when the alien is served a notice to appear*." 8 U.S.C. § 1229b-(d)(1) (emphasis added). Thus, "[a]fter IIRIRA's enactment, the initiation of deportation proceedings stops the clockSSan alien can no longer accrue years of continuous physical presence once proceedings have begun." *Appiah v. INS*, 202 F.3d 704, 707 (4th Cir. 2000).

Initially, § 304(a)'s use of the term "notice to appear" created potential confusion, because it was uncertain whether this stop-time provision also applied to orders to show cause. But the BIA interpreted the new phrase to include pre-IIRIRA show-cause orders, and, in 1997, Congress eliminated any remaining confusion: It enacted the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), which included a clarifying amendment to the IIRIRA's stop-time rule, replacing "notices to appear" with "orders to show cause." *See* NACARA § 203(a), Pub. L. No. 105-100, 111 Stat. 2160, 2196.

The IIRIRA's amendments to the INA typically do not apply to aliens placed in deportation proceedings before April 1, 1997. *See* § 309(c)(1). Section 309(c)(5) contains, however, a special "Transitional Rule with Regard to Suspension of Deportation," which provides that the new stop-time rule "shall apply to notices to appear issued *before, on, or after the date of the enactment of this Act* [Sept. 30, 1996]." Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-627 (emphasis added). It is this provision that petitioners allege is impermissibly retroactive.

## B.

Two circuits have considered this precise challenge to the retroactive application of IIRIRA's stop-time provisions, and both have upheld that application and rejected the aliens' constitutional arguments. *See Tefel v. Reno*, 180 F.3d 1286, 1301-02 (11th Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. 3513 (U.S. Feb. 3, 2000) (No. 99-1314); *Appiah*, 202 F.3d at 708-10. Those courts employed similar analyses, rejecting the aliens' arguments on two grounds. First, the courts held that the stop-time rule has no retroactive effect, because it does not "impair rights a party possessed when he acted, increase a party's

4

liability for past conduct, or impose new duties with respect to transactions already completed." *Appiah*, 202 F.3d at 709 (quoting *Landgraf*, 511 U.S. at 280); *Tefel*, 180 F.3d at 1302. Applying IIRIRA's new stop-time rule to petitioners' pending INS proceedings "does not overturn final BIA decisions affirming an immigration judge's decision to grant suspension of deportation." *Id.*[4] While petitioners may have expected that they would be eligible for suspension of deportation, IIRIRA's amendment limited only their eligibility for *discretionary* relief; it did not infringe on a *right* that they possessed prior to its enactment. *See Appiah*, 202 F.3d at 709.

Similarly, the courts also rejected the due process challenges, because the aliens could not show that they had a "vested right in not being deported, and the challenged statutory provisions easily withstand rational basis review." *Id.*; *Tefel*, 180 F.3d at 1301. The *Tefel* court noted that "[n]o constitutionally protected interest arises from the INS' actions in granting or denying applications for suspension because the Attorney General exercises 'unfettered' discretion over applications for suspension." *Id.*[5] And the *Appiah* court correctly noted that there is a rational basis for the new stop-time ruleSS"Congress enacted the rule to remove an alien's incentive for prolonging deportation proceedings in order to become eligible for

suspension." *Appiah*, 202 F.3d at 709.

Petitioners offer no arguments to refute these courts' cogent analyses. Consequently, we join our sister courts in holding that the application of the IIRIRA's stop-time provision to deportation proceedings pending at the time of the statute's enactment does not violate aliens' due process rights.

IV.

Petitioners make an alternative argument that they are eligible for suspension of deportation because they have accrued a full seven years of continuous physical presence in the United States *after* service of the orders to show cause. That is, they have remained in the country for more than seven years since they received the show-cause orders in July 1991. While the transitional rule, § 309(c)(5), provides that § 304(a) plainly stops the clock and prevents petitioners from adding the time they have spent in deportation proceedings to the time they had accrued before they were served the show-cause orders, petitioners argue that the stop-time rule is silent as to whether the time spent in the proceedings can *itself* be sufficient to satisfy the seven-year-continuous-presence requirement. Thus, they conclude that nothing has operated to cut off this seven-year period for eligibility purposes.

The INS responds by noting that because petitioners did not make this argument before the BIA, they have failed to exhaust their administrative remedies, and we are without jurisdiction to hear the issue.[6] Petitioners did not file a motion to reconsider the BIA's decision,

---

[4] *See also Landgraf*, 511 U.S. at 269 ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law.").

[5] *See also Appiah*, 202 F.3d at 709 ("Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest.").

[6] *See Rodriguez v. INS*, 9 F.3d 408, 414 (5th Cir. 1993) (holding that a failure to exhaust remedies with respect to a question deprives the court of jurisdiction to hear the matter).

and they do not challenge the fact that they have never presented this argument to the BIA.

Petitioners respond, instead, that to exhaust their administrative remedies, they were not required to file a motion to reconsider, and that doing so would be futile, because the BIA was bound by its interpretation in *Nolasco-Tofino*, which precluded eligibility for suspension of deportation in cases such as petitioners'. This is an odd assertion, however, because petitioners' argument on the merits of this claim is that *Nolasco-Tofino* did *not* address the particular issue presented in this caseSSi.e., whether the continuous-presence requirement can be satisfied *after* service of the orders to show cause. If this claim has any merit, then, *Nolasco-Tofino* would not bind the BIA, and a motion to reconsider, therefore, would not have been futile.

The petitioners, except Cynthia, were served with show cause orders on July 23, 1991; Cynthia was served on July 29, 1991. As a result, by August 1998 the petitioners could have raised this new argument that they had been physically present in the country for seven years since the service of the show cause orders. At that time, their case was still pending before the BIA, which did not render its decision until May 17, 1999.

Furthermore, the petitioners base their argument, in part, on the concurring opinion in *Nolasco-Tofino*, which was decided on April 15, 1999, a month before the BIA decided petitioners' case. Thus, they had more than thirty days in which they again could have raised this issue before the BIA. Therefore, they have not exhausted their administrative remedy with respect to this argument, so we are without jurisdiction to review it.

The petition for review is DENIED, and the order of the BIA is AFFIRMED.

6