United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-60385

NOE DE JESUS GONZALEZ-GARCIA,

Petitioner

VERSUS

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent

On Petition for Review of a Final Order of the Board of
Immigration Appeals

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. Eugene Davis, Circuit Judge:

Noe De Jesus Gonzalez-Garcia ("Gonzalez"), a native and citizen of Mexico, petitions this court to review a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA initially affirmed the immigration judge's ("IJ") order removing Gonzalez based on his 1985 and 1986 convictions and remanded to the IJ to consider his claim for discretionary relief pursuant to INA § 212(c). On remand the immigration judge ordered

Gonzalez removed based on a 1998 Texas assault conviction. The IJ concluded Gonzalez was not entitled to discretionary relief because the conviction was a crime of violence ("COV") that occurred after the effective dates of IIRIRA and AEDPA. Because we conclude that the assault conviction is not a COV, Gonzalez is not removable pursuant to that offense, and he is entitled to have his claim for discretionary relief considered by the BIA. Accordingly we reinstate the BIA's original order of removal based on the 1985 and 1986 convictions and remand to the BIA for consideration of Gonzalez's claim for discretionary relief.

## I. Facts and Procedure

Gonzalez is a native and citizen of Mexico. He was admitted to the United States on December 31, 1985 as a lawful permanent resident. He was convicted of three crimes after his admission. In 1986, Gonzalez was convicted of two counts of aiding and abetting the entry of an illegal alien. In 1989, he was convicted in Texas state court of theft of an automobile. Finally, on June 12, 1998, Gonzalez was convicted in Texas state court of assault.

On April 28, 1998, the Immigration and Naturalization Service (INS) issued a Notice to Appear charging Gonzalez as removable based on the theft conviction, which was identified as a crime of moral turpitude.[1] The INS later filed a supplemental Notice to Appear charging that Gonzalez was removable pursuant to the alien

---

[1] An alien is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) if he or she is convicted of a crime of moral turpitude.

2

smuggling convictions.[2] During the hearings the IJ asked Gonzelez if he had been convicted of any other crimes beside those alleged. Gonzalez admitted that he had been convicted for "push[ing]" his wife. After the hearings, the IJ found that the theft conviction was a crime of moral turpitude, rendering Gonzalez removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i). The IJ also found that Gonzalez was removable under § 1227 (a)(1)(E)(i) for his alien smuggling convictions.

Gonzalez asserted that he was eligible for waiver of deportation pursuant to Immigration and Nationality Act (INA) § 212(c) or for cancellation of removal under 8 U.S.C. § 1229b(a)(2). The IJ denied relief, concluding that the car theft conviction interrupted the seven years of continuous presence needed for cancellation of removal.[3]

The Board of Immigration Appeals remanded the case in light of INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271 (2001), finding that

_____

[2] An alien is removable pursuant to 8 U.S.C. § 1227 (a)(1)(E)(i) if he knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

[3] Section 1229b(d)(1) states: "[A]ny period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) ...when the alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." 8 U.S.C. § 1229b(d)(1).

Gonzalez was entitled to seek cancellation or removal and waiver under former INA § 212(c) (8 U.S.C. § 1182(c)(1994)). Upon remand, the INS filed another supplemental Notice to Appear, alleging that Gonzalez's assault conviction was a crime of domestic violence because it was committed against his wife.[4] Gonzalez admitted that he had a conviction for an assault against a family member and conceded that he was removable because the offense was a crime of domestic violence. The INS noted that if Gonzalez was removable for the assault offense, then St. Cyr would not apply and Gonzalez would not be entitled to seek discretionary relief because the conviction occurred in 1998, after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA).

The IJ granted a continuance to allow the parties to brief the issue of Gonzalez's eligibility for discretionary relief. After the continuance, Gonzalez asked to retract his admission that the offense was a crime of domestic violence, but the IJ stated that the parties were bound by their pleadings. Gonzalez argued that the assault conviction was a Class C misdemeanor that required proof that he committed the offense intentionally. The IJ rejected Gonzalez's assertion that a particular mental state was required to constitute a crime of violence under federal law. Gonzalez also asserted that the IJ could not go beyond the charging instrument to determine that Gonzalez's wife was the victim of the assault. The

_____

[4] INA § 237(a)(2)(E)(i) makes any alien deportable for crimes of domestic violence. 8 U.S.C. § 1227(a)(2)(E)(i).

4

IJ also rejected that argument. The IJ found that Gonzalez was not eligible for discretionary relief because of the 1998 assault conviction. Because the IJ found Gonzalez removable for the Texas assault conviction (a post-IIRIRA offense), the judge did not reach the issue of whether Gonzalez was entitled to cancellation of removal or § 212(c) relief for the theft and smuggling convictions.

On review to the BIA, Gonzalez argued that the IJ erred by not allowing him to amend his pleadings in light of a new decision by a different IJ that a Texas assault conviction did not constitute a COV or a crime of domestic violence. He also argued that he was eligible for cancellation of removal under INA § 240A(a) and that the IJ abused his discretion by denying Gonzalez's request for voluntary departure. The BIA affirmed the IJ's decision without opinion. In this appeal, Gonzalez contends the BIA erred in four respects: (1) in denying his request to amend his pleadings regarding the domestic violence charge; (2) in concluding that the Texas assault conviction constitutes a COV under 18 U.S.C. § 16; (3) in concluding that the assault conviction constitutes a crime of domestic violence; and (4) in concluding that he is ineligible to apply for Cancellation of Removal under INA § 240(A)(a), 8 U.S.C. 1229b(a) or § 212(c). We address Gonzalez's claims below, however because we agree with Petitioner that the Texas assault conviction is not a COV, we do not reach his first and third issues.

5

## II. Standard of Review

This court generally only reviews decisions of the BIA, except it may review an IJ's decision when the BIA affirms the IJ's decision without opinion or additional explanation. See Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003). This court must affirm the decision if there is no error of law and if reasonable, substantial, and probative evidence on record, considered as a whole, supports the Board's factual findings. Id.

## III. Crime of Violence

Gonzalez contends that his Texas assault conviction does not constitute a crime of violence as defined by 18 U.S.C. § 16. He maintains that the assault offense for which he was convicted did not have as an element the intentional use of physical force. Because the offense could be committed without the use of physical force, we agree that this offense does not qualify as a COV.

Section 1227 (a)(2)(E)(i) of Title 8 provides that "[a]ny alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable." For purposes of that section, "the term 'crime of domestic violence' means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person...." 8 U.S.C. § 1227(a)(2)(E)(i). Thus, whether Gonzalez's assault conviction was a "crime of domestic violence" depends on (1) whether his assault conviction is a "crime of violence as defined

6

by 18 U.S.C. § 16, and (2) whether his victim was within the class of persons set forth in § 1227(a)(2)(E)(i).[5]

Section 16 defines crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or a felony offense that involves a substantial risk that physical force will be used against the person or property of another. 8 U.S.C. § 16(a) & (b).[6]  This court uses a categorical approach to determine whether an offense is a COV.  United States v. Charles, 301 F.3d 309, 313-14 (5th Cir. 2002).  In other words, it reviews whether a defined offense is, in the abstract, a COV without looking to the underlying facts of the conviction.  United States v. Chapa-Garza, 243 F.3d 921, 924 (5th Cir. 2001).

> Under Texas law, a person commits assault if the person:
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably

---

[5]  Because we find that the Texas assault conviction is not a COV as defined by 18 U.S.C. § 16, we need not address whether the victim was in the class of persons set forth in § 1227(a)(2)(E)(i).

[6]  The Texas assault offense which Gonzalez was charged is a misdemeanor offense.  Thus, it clearly does not fall under 8 U.S.C. 16(b) which requires a felony conviction.

7

believe that the other will regard the contact as offensive or provocative.

Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. 22.01(a).[7]

The charging instrument alleged that Gonzalez "did then and there intentionally and knowingly cause bodily injury to CLAUDIA GONZALEZ, hereinafter called the Complainant, by STRIKING THE COMPLAINANT WITH HIS HAND." The language of the charging instrument tracks § 22.01(a)(1), but the judgement of conviction indicates that the charge was "[r]educed to a Class C assault." Therefore, Gonzalez pleaded guilty to either subsection (2) or (3) of § 22.01(a).

If a statute provides alternative means of committing an offense, this court may look to the charging papers to determine which alternative applies to a particular case. See United States v. Calderon-Pena, 383 F.3d 254, 258 (5th Cir. 2004), cert. denied, 125 S.Ct. 932 (2005). Because Gonzalez pleaded guilty to a lesser offense than the one charged, the charging instrument is of little assistance. However, because the bill of information alleged that Gonzalez actually caused bodily injury to the victim, rather than threatening her, we must consider that Gonzalez was convicted of violating § 22.01(a)(3). To convict under § 22.01(a)(3), the state need only prove that the perpetrator intentionally or knowingly

---

[7] An offense under § 22.01(a)(1) is a Class A misdemeanor, while offenses under § 22.01(a)(2) and § 22.01(a)(3) are Class C misdemeanors.

8

caused "offensive or provocative" physical contact with another.

This court has found that "force," as used in the statutory definition of a COV is "synonymous with destructive or violent force." United States v. Rodriquez-Gunzman, 56 F.3d 18, 20 n. 8 (5th Cir. 1995). Recently we have stated that "while a 'harmful' touching likely involves as an element the use, attempted use, or threatened use of destructive or violent force against the person of another necessary to quality for a crime of violence sentence enhancement...*an offensive touching may not involve such an element*." United States v. Sanchez-Torres, 136 Fed.Appx. 644 (5th Cir. 2005)(emphasis added). We find this reasoning persuasive and conclude that "offensive or provocative contact" does not necessarily involve the use of physical force.[8] Therefore, subsection (a)(3) of the Texas assault statute does not constitute a COV and Gonzalez is not removable for that offense.

## IV.  Cancellation of Removal

For the reasons state above, Gonzalez is not removable for committing a crime of domestic violence, and we must address whether he is entitled to present his claim for 212(c) relief or

---

[8]  Three other Circuits have followed similar reasoning and have reached the conclusion that offensive contact does not involve "use of force."  See United States v. Arnold, 58 F.3d 1117, 1122 n. 4 (6th Cir. 1995); Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003); Singh v. Ashcroft, 386 F.3d 1228, 1234 (9th Cir. 2004).  Two Circuits, on the other hand, have found that offensive physical contact does involve the "use of force."  See United States v. Nason, 269 F.3d. 10, 20 (1st Cir. 2001); United States v. Smith, 171 F.3d 617, 621 n.2 (8th Cir. 1999).

9

cancellation of removability. Prior to 1996, INA § 212(c) permitted the Attorney General discretion to grant a suspension of deportation to an alien if he maintained a continuous physical presence in the United States for seven years or more. Section 212(c) was eliminated by two statutes adopted in 1996--the AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Section 212(c), suspension from deportation, was replaced with a narrower form of relief, "cancellation of removal." 8 U.S.C. § 1229b. Unlike § 212(c), § 1229b no longer allowed aliens who committed crimes of moral turpitude to receive a cancellation of removal. See 8 U.S.C. § 1229b(b)(1)(C).

Furthermore, after the effective date of IIRIRA, April 1, 1997, an alien's continuous physical presence ended if the alien committed a crime of moral turpitude or was served with a notice to appear. 8 U.S.C. 1229b(d)(1). This is commonly referred to as the stop-time rule. The issue in this case therefore is whether the stop-time rule applies and whether Gonzalez's 1989 theft conviction, a crime of moral turpitude, ended the running of his continuous physical presence in the United States. Gonzalez asserts that application of IIRIRA to an offense committed before IIRIRA's enactment has an improper retroactive effect. We agree.

In Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483 (1994), the Supreme Court discussed the principle that laws should not be given retroactive effect. Landgraf established a two-step analysis for determining whether a statute is given retroactive

10

effect. First, the court "is to determine whether Congress has expressly prescribed the statute's proper reach." Id. at 280. Second, if "the statute contains no such express command, the court must determine whether the new statute would have retroactive effect."[9] Id.

In United States v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001), the Supreme Court applied Landgraf's analysis to changes in the immigration laws made by IIRIRA. St. Cyr involved an alien who pleaded guilty to a criminal charge that made him deportable. St. Cyr would have been eligible for a waiver of deportation under the immigration law in effect at the time he was convicted, but his removal proceedings were commenced after the effective dates of AEDPA and IIRIRA.

In St. Cyr, the Supreme Court held that "[a] statute may not be applied retroactively...absent a clear indication from Congress that it intended such a result." The Supreme Court specifically considered whether depriving removable aliens of consideration for § 212(c) relief produced an impermissible retroactive effect for aliens who were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for §

---

[9] The court determines whether there is a retroactive effect by "[a]sking whether the new provision attaches new legal consequences to events completed before its enactment," Landgraf, 511 U.S. at 269-70, and by examining "whether [the statute] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. at 280.

212(c) relief.  Id. at 320.  The Court found that because St. Cyr and "other aliens like him, almost certainly relied upon that likelihood [of receiving § 212(c) relief] in deciding whether to forgo their right to a trial, the elimination of any possibility of the § 212(c) relief by IIRIRA has an obvious and severe retroactive effect."  Id. at 325.  The Court held that § 212(c) relief remained available to aliens whose "convictions were obtained through plea agreements, and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  Id. at 326.  The Court also stated that the "elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to transactions or considerations already past.'"  Id. at 321 (quoting Landgraf, 511 U.S. at 269).  St. Cyr's holding applies with equal force to Gonzalez.  The inability of Gonzalez to receive 212(c) relief attaches a new disability for his pre-IIRIRA convictions.

The Government argues that United States v. Gonzales-Torres, 213 F.3d 899 (5th Cir. 2000), applies to this case.  In Gonzalez-Torres, this court held that "the application of the stop-time provision to deportation proceedings pending at the time of the statute's enactment does not violate aliens' due process rights."  Id. at 903.  Unlike Gonzalez-Garcia's case, however, Gonzalez-

12

<u>Torres</u> involved the *notice to appear* prong of IIRIRA's stop-time provision, rather than the commission of a crime of moral turpitude prong. In <u>Gonzalez-Torres</u>, we relied on INA § 309(c)(5), a special "Transitional Rule with Regard to Suspension of Deportation," which provides that the new stop-time rule "shall apply to *notices to appear* issued before, on, or after the date of the enactment of this Act [Sept. 30 1996]." Pub.L. No. 104-208, 110 Stat. 3009-546, 3009-627 (emphasis added); <u>see also</u>, <u>Gonzalez-Torres</u>, 213 F.3d at 902-903. Because Congress did not enact a similar transitional rule for the offenses referred to in section 1182(a)(2), crimes of moral turpitude, the reasoning in <u>Gonzalez-Torres</u> is inapplicable.

Prior to the clock-stopping provision in IIRIRA, the seven years of continuous lawful residence required for a 212(c) waiver did not end until a deportation order became administratively final. Therefore, Gonzalez would have been entitled to 212(c) discretionary waiver of removal because the deportation proceedings were not final until more than seven years after he satisfied the continuous physical residence requirement. Because the clock-stopping provision attaches new legal consequences to actions completed before its enactment and because Congress has not expressly made it retroactive, the statute is impermissibly retroactive and Gonzalez is entitled to seek 212(c) relief.

### V. Conclusion

Because we find that the petitioner's Texas assault conviction

13

is not a crime of violence, he is not removable pursuant to INA § 237(a)(2)(E)(i), and he is entitled to apply for discretionary waiver pursuant to INA § 212(c), 8 U.S.C. 1182(c). Gonzalez is removable based on the 1985 and 1986 convictions and we reinstate the BIA's original order of removal and remand this case to the BIA for consideration of Gonzalez's claim for discretionary relief and further proceedings consistent with this opinion.

14