**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-60122

TEODULO CANTU-DELGADILLO,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Teodulo Cantu-Delgadillo petitions this court for review of an order from the Board of Immigration Appeals (BIA) denying his request for administrative closure and dismissing his appeal. We deny the petition.

**I**

Cantu-Delgadillo, a native and citizen of Mexico, entered the United States as a lawful permanent resident on or about July 5, 1978. On November 27, 1996, Cantu-Delgadillo pleaded guilty in Texas state court to possessing more than fifty pounds and less than 2000 pounds of marijuana. He received deferred adjudication and was placed on probation for ten years. On January 31, 1997, the Immigration and Naturalization Service (INS) issued an Order to Show

Cause, charging Cantu-Delgadillo as being deportable because he was an alien convicted of a controlled substance violation and an aggravated felony.

Cantu-Delgadillo appeared before an immigration judge (IJ) and denied all of the factual allegations and charges of deportability. The IJ found all of the factual allegations and charges to be true, determined that Cantu-Delgadillo was ineligible for any type of relief, and ordered him deported. The BIA agreed with the IJ that Cantu-Delgadillo was deportable based upon his controlled substance violation but held that Cantu-Delgadillo was not deportable as an aggravated felon. However, in 1998, the BIA administratively closed the proceedings pending the publication of a new regulation by the Attorney General to implement a procedure, known as "repapering," for terminating deportation proceedings for certain lawful permanent residents.

In 2001, the BIA reinstated the proceedings against Cantu-Delgadillo at the request of the INS. The BIA then dismissed Cantu-Delgadillo's appeal from the IJ's order. In the order of dismissal, the BIA agreed with the IJ that Cantu-Delgadillo was deportable because of his controlled substance conviction and also because he was an aggravated felon. The BIA further determined that Cantu-Delgadillo was ineligible for discretionary relief under former Immigration and Nationality Act (INA) § 212(c).

Cantu-Delgadillo filed a federal habeas corpus petition challenging the BIA's findings, and his petition was consolidated with other similar petitions. The district court denied the consolidated petitions, and all of the petitioners appealed. This court dismissed the claims challenging the BIA's decision and affirmed the dismissal of the petitioners' habeas petitions. However, the Supreme Court vacated this court's opinion and remanded for further proceedings in light of *Lopez v. Gonzales*.[1] On remand, this court vacated the

---

[1] 549 U.S. 47 (2006).

district court's judgment as to Cantu-Delgadillo and remanded the matter to the BIA for further consideration in light of *Lopez*.

On remand, the Department of Homeland Security (DHS) withdrew the aggravated felon charge but maintained that Cantu-Delgadillo's conviction of a controlled substance offense rendered him both deportable and ineligible for discretionary relief under former INA § 212(c). Cantu-Delgadillo requested that his case be administratively closed pending issuance of the repapering regulations or, in the alternative, that his case be remanded so that he could apply for suspension of deportation under former 8 U.S.C. § 1254(a)(2) (1996). He also argued that the timing of the proceedings and the combination of provisions applicable to him violated his rights to equal protection and due process. The DHS opposed Cantu-Delgadillo's request for administrative closure.

The BIA denied Cantu-Delgadillo's request for administrative closure on the ground that such a request could not be granted if opposed by either party. The BIA determined that Cantu-Delgadillo was ineligible for suspension of deportation and that it lacked jurisdiction to consider Cantu-Delgadillo's facial constitutional challenges. Accordingly, the BIA dismissed Cantu-Delgadillo's appeal. Cantu-Delgadillo filed a timely petition for review in this court.

## II

Under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA),[2] this court lacks jurisdiction to review the final order of removal against Cantu-Delgadillo.[3] However, this court retains jurisdiction to consider Cantu-Delgadillo's arguments to the extent he raises

---

[2] Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

[3] *See Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir. 1997).

constitutional claims or questions of law.[4]  We review questions of law de novo but "accord deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect."[5]

## III

### A

Cantu-Delgadillo argues that, despite the DHS's opposition to administrative closure, the BIA should have administratively closed his case to await the repapering regulations because the denial was unfair to him and because the DHS's opposition was unjustified and contrary to internal DHS policy.  The BIA held in *In re Gutierrez-Lopez* that "[a] case may not be administratively closed if opposed by either of the parties."[6]  Because the DHS opposed the administrative closure, the BIA had no discretion to administratively close the case.[7]  Accordingly, the BIA properly denied Cantu-Delgadillo's request for administrative closure and his alternative request for an abeyance.[8]

---

[4] *See* 8 U.S.C. § 1252(a)(2)(D).

[5] *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).

[6] 21 I. & N. Dec. 479, 480 (BIA 1996).

[7] *See* 8 C.F.R. § 1003.1(g) ("[D]ecisions of the Board, and decisions of the Attorney General, shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States."); *Galvez-Vergara v. Gonzales*, 484 F.3d 798, 802 (5th Cir. 2007) ("[T]he BIA's regulations require it to follow its own precedent unless overruled.").

[8] *See Garza-Moreno v. Gonzales,* 489 F.3d 239, 242 (6th Cir. 2007) ("The decision to administratively close a case is, in this context, not distinguishable from a continuance."); *Masih v. Mukasey*, 536 F.3d 370, 372 n.2 (5th Cir. 2008) (noting that there is no difference in treatment between a request for a

## B

Cantu-Delgadillo also contends that the BIA's denial of his request for administrative closure and the timing of his deportation proceedings each resulted in the violation of his due process rights. To the extent that Cantu-Delgadillo also argues that the BIA erred by misconstruing his "as applied" constitutional claims as facial challenges, any error was harmless because the BIA lacked jurisdiction to consider those challenges.[9]

However, as noted, this court has jurisdiction to consider Cantu-Delgadillo's constitutional issues. "To establish a substantive due process violation, a plaintiff must first both carefully describe that right and establish it as 'deeply rooted in this Nation's history and tradition.'"[10] "If the right is so deeply rooted—if it is fundamental—we subject it to more exacting standards of review. If it is not, we review only for a rational basis."[11] Additionally, "[t]his court has long held that '[a]liens enjoy some constitutional protections, regardless of their status,' but it has also long held that 'this protection is limited by Congress's broad powers to control immigration.'"[12]

Cantu-Delgadillo asserts that, as a lawful permanent resident, he has a fundamental liberty interest in being able to reside with his children and work in the United States. We have previously rejected a similar argument in a

---

continuance and a request for an abeyance).

[9] *See Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations.").

[10] *Malagon de Fuentes v. Gonzales,* 462 F.3d 498, 505 (5th Cir. 2006) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

[11] *Id.*

[12] *Ahmed v. Gonzales*, 447 F.3d 433, 439 (5th Cir. 2006) (second alteration in original) (quoting *Rodriguez-Silva v. INS*, 242 F.3d 243, 246, 247 (5th Cir. 2001)).

related context. In *Malagon de Fuentes v. Gonzales*,[13] the petitioner, a lawful permanent resident and mother of four natural-born United States citizens, was convicted of theft of property in a welfare fraud and subsequently left the country for a day.[14] On return to the United States, the INS charged her as an "arriving alien" inadmissible under the INA.[15] On appeal from an order of removal, the petitioner argued that her liberty interests in staying in the United States and being with her children were violated.[16] We affirmed, holding that the petitioner had "no 'right' to be admitted to the United States" and, therefore, "the government needs only a rational basis to enforce a law that bars her admission."[17] Because "Congress'[s] choice to disfavor the admission of aliens who have committed offenses is not irrational,"[18] this court held that the petitioner's "predicament d[id] not constitute a deprivation of substantive due process."[19]

Similar to the petitioner in *Malagon de Fuentes*, Cantu-Delgadillo does not have a fundamental liberty interest in being able to live and work in the United States.[20] Congress's choice to disfavor the retention of aliens who have been

---

[13] 462 F.3d 498 (5th Cir. 2006).

[14] *Id*. at 500.

[15] *Id*.

[16] *Id*. at 505.

[17] *Id*. at 505–06.

[18] *Id*. at 504.

[19] *Id*. at 505.

[20] *Cf. Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006) ("This circuit has repeatedly held that discretionary relief from removal, including an application for an adjustment of status, is not a liberty or property right that requires due process protection.").

convicted of controlled substance violations is not irrational. Therefore, Cantu-Delgadillo's substantive due process claim fails.

## C

Cantu-Delgadillo further asserts an equal protection claim. He argues that the BIA's refusal to close his case administratively impermissibly differentiated him from similarly-situated lawful permanent residents who have received the benefit of administrative closure, and that the results of his deportation proceedings would have been different had the timing occurred according to three alternative scenarios.

Cantu-Delgadillo alleges that his case is the only known instance in which the BIA refused to administratively close a case to await the repapering regulations when unusually adverse factors did not exist. Although Cantu-Delgadillo cites to various cases in support of that assertion, none of the cited cases specifically involves the BIA granting administrative closure to a lawful permanent resident to await the repapering regulations in the face of DHS opposition. In fact, the BIA recently noted in an unpublished decision that it has never administratively closed a case for the purpose of repapering "over the objection of the DHS."[21] Cantu-Delgadillo has failed to show that the BIA's decision regarding administrative closure in his case was different from the BIA's decisions in other cases involving lawful permanent residents in which the DHS opposed administrative closure. Cantu-Delgadillo has therefore failed to establish an equal protection claim on this basis.[22]

---

[21] *See In re Ke Sung Cho*, No. A36 773 962, 2007 WL 1125778, at *1 (BIA Feb. 23, 2007). ("While the Immigration Judges and this Board have administratively closed many cases *sua sponte* for the purpose of repapering, we have never done so over the objection of the DHS, nor do we have the authority to do so in this case.").

[22] *See Malagon de Fuentes*, 462 F.3d at 507 (rejecting alien's equal protection claim, in which alien alleged she was treated differently from similarly situated group, after determining that the alien was materially distinct

In support of the second ground of his equal protection claim, Cantu-Delgadillo asserts that, under the following alternative scenarios, he either would not have been deportable or would have likely received discretionary relief: (1) the deportation proceedings against him occurred before September 30, 1996; (2) the deportation proceedings against him arose prior to April 24, 1996, but were not completed until after April 1, 1997; or (3) the deportation proceedings against him were initiated after April 1, 1997.

Cantu-Delgadillo does not suggest that the BIA applied these laws unequally or in an invidiously discriminatory manner.[23] Instead, he argues only that reasonable laws that are being applied equally have an unfair result. But "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."[24] Cantu-Delgadillo's second ground for equal protection also fails.

## D

Cantu-Delgadillo argues that the BIA erred by holding that he was not eligible for suspension of deportation under former 8 U.S.C. § 1254(a)(2). The IIRIRA added a stop-time rule for determining an alien's eligibility for suspension of deportation or cancellation of removal, providing that:

> any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2)

---

from that group).

[23] *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 316 (1993) ("The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955))).

[24] *Beach Communications,* 508 U.S. at 313.

or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.[25]

Under the stop-time rule, aliens could no longer accrue years of continuous physical presence while in deportation proceedings.[26] Although IIRIRA was generally not retroactively applicable, IIRIRA § 309(c)(5) explicitly made the stop-time rule applicable "to notices to appear issued *before, on, or after the date of the enactment of this Act*."[27] In 1997, the stop-time rule was amended for purposes of clarity to replace "notices to appear" with "orders to show cause."[28] Although IIRIRA § 309(c)(5) made no mention as to its retroactive application to criminal offenses, this court has held "that the stop-time rule should be retroactively applied to convictions that arose before the IIRIRA was enacted."[29]

The BIA has interpreted the stop-time rule in cases involving former 8 U.S.C. § 1254(a)(1) to prohibit the restarting of the clock once an alien has been served with an Order to Show Cause. In *In re Mendoza-Sandino*, the BIA held that "the continuous physical presence clock does not start anew after the service of an Order to Show Cause so as to allow an alien to accrue the time required to establish eligibility for suspension of deportation subsequent to the service of an Order to Show Cause."[30] Relying on both the plain language of the statute and

---

[25] IIRIRA, sec. 304, 110 Stat. 3009-595 (1996) (codified as amended at 8 U.S.C. § 1229b(d)(1)).

[26] *Gonzalez-Torres v. INS*, 213 F.3d 899, 902 (5th Cir. 2000).

[27] *Id*. at 902-03 (internal quotation marks and citation omitted).

[28] *Id*. at 902.

[29] *Heaven v. Gonzales*, 473 F.3d 167, 176 (5th Cir. 2006).

[30] 22 I. & N. Dec. 1236, 1239 (BIA 2000).

the legislative history, the BIA determined that the service of an Order to Show Cause terminates an alien's continuous physical presence.[31]

This court in *McBride v. INS* concluded that the BIA's interpretation of the stop-time rule in *Mendoza-Sandino* was reasonable and therefore entitled to deference.[32] We stated, "[a]lthough the BIA's reading of the statute is not the only one possible or necessarily even the best possible reading, it is certainly a credible one. That reading accounts for the language employed by Congress and is well supported by the legislative history of the stop-time rule as well as by the other legislation in this realm of the immigration law's structure."[33]

Although the BIA in *Mendoza-Sandino* and this court in *McBride* dealt with 8 U.S.C. § 1254(a)(1), the sections of the IIRIRA relied upon in both of those cases, § 304 and § 309(c)(5), are also applicable to 8 U.S.C. § 1254(a)(2). Therefore, because there is no compelling evidence that the BIA's interpretation of § 1254(a)(2) and the stop-time rule were incorrect, that interpretation warrants deference.[34]

The parties agree that the BIA erred by calculating the requisite period of continuous physical presence under § 1254(a)(2) as commencing on the date that Cantu-Delgadillo committed his controlled substance offense, rather than on the date of his controlled substance conviction. However, this error is harmless because even under the correct calculation, Cantu-Delgadillo failed to meet the requisite period of continuous physical presence. Accordingly, the BIA did not

---

[31]*Id.* at 1241–42.

[32] 238 F.3d 371, 376 (5th Cir. 2001) ("For purposes of review by a federal appellate court, the BIA's interpretation of the stop-time rule clearly meets *Chevron*'s requirement that the agency's construction be 'based on a permissible construction of the statute.'").

[33] *Id.*

[34] *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).

err in holding that Cantu-Delgadillo was not eligible for suspension of deportation under former 8 U.S.C. § 1254(a)(2).

## E

Cantu-Delgadillo contends that the BIA erred by permitting a single board member to decide his case rather than a three-member panel. Under 8 C.F.R.§ 1003.3(f), "[a]ll cases and motions pending on September 25, 2002, shall be adjudicated according to the rules in effect on or after that date . . . ." Under the current regulations, if a single board member determines that an appeal is not appropriate for affirmance without opinion, that member "shall issue a brief order affirming, modifying, or remanding the decision under review, unless the Board member designates the case for decision by a three-member panel."[35] However, prior to 2002, the regulations required that an appeal for which affirmance without opinion was not appropriate be assigned to a three-member panel for review and decision.[36] Cantu-Delgadillo asserts that his case was not "pending" on September 25, 2002, because, on that date, he was challenging the BIA's prior decision in his case in federal district court. He argues that § 1003.3(f) is therefore not applicable to his case and that his appeal should have been sent to a three-member panel for review.

This court remanded the case to the BIA for determination on February 13, 2007. Therefore, regardless of whether Cantu-Delgadillo's appeal was actually "pending" before the BIA on September 25, 2002, the case was pending before the BIA "on or after" that date and § 1003.3(f) is applicable.

Cantu-Delgadillo also argues that his appeal should have been heard by a three-judge panel because the case met the requirements of 8 C.F.R.

---

[35] 8 C.F.R. § 1003.1(e)(5).

[36] 8 C.F.R. § 3.1(a)(7)(iv) (2001).

§ 1003.1(e)(6)(ii).[37] But 8 C.F.R. § 1003.1(e)(5) provides that a single-board member has the discretion to decide whether the case merits review by a three-member panel.[38] Assignment to a three-member board is not mandatory even if it meets the criteria under 8 C.F.R. § 1003.1(e)(6).[39] Because the decision to designate the case to be heard by a three-member panel is discretionary, this court lacks jurisdiction to review the BIA's decision.[40] Accordingly, the BIA did not err in following its own regulations by permitting a single board member to decide the case.

\* \* \*

Cantu-Delgadillo's petition for review is DENIED.

---

[37] *See* 8 C.F.R. § 1003.1(e)(6)(ii) (stating that a case may be assigned for review by a three-member panel if there is a "need to establish a precedent construing the meaning of laws, regulations, or procedures").

[38] *See* 8 C.F.R. § 1003.1(e)(5) ("If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review, unless the Board member designates the case for decision by a three-member panel under paragraph (e)(6) of this section under the standards of the case management plan.").

[39] *See* 8 C.F.R. § 1003.1(e)(6) ("Cases *may* only be assigned for review by a three-member panel if the case presents one of these circumstances . . . ." (emphasis added)).

[40] *See* 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.").