**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 14, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 05-61022

)))))))))))))))))))))))))))

DERVIN VENION HEAVEN, also known as Sean Samuels,
also known as Ervin Henven, also known as Derving Evan

          Petitioner

     v.

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL

          Respondent

---

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A40-088-884

---

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

     Before us is a petition for review of a decision of the
Board of Immigration Appeals ("BIA"), which affirmed the
determination of an immigration judge that the petitioner was not
eligible to apply for cancellation of removal on the basis of the
stop-time rule.  Because the BIA correctly decided that the stop-
time rule may be applied retroactively to the petitioner's pre-
1996 convictions and because we lack jurisdiction over the
petitioner's remaining claims, we DENY the petition in part and
DISMISS it in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Dervin Venion Heaven ("Heaven") was born in Jamaica in 1966 and admitted to the United States as an immigrant on March 14, 1986, but has never become a United States citizen. On February 11, 1998, Heaven pleaded guilty, pursuant to a plea agreement, to the criminal sale of marijuana in the fourth degree in violation of New York Penal Law § 221.40.  Following his conviction, the Immigration and Naturalization Service ("INS")[1] took Heaven into custody and initiated proceedings to remove him from the United States.  The INS filed a Notice to Appear in immigration court and served it on Heaven on December 4, 2000. In the Notice, the INS charged that Heaven was subject to removal under § 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(I) (2000), which authorizes the deportation of any alien who has been convicted of a violation of "any law or regulation of a State . . . relating to a controlled substance . . . ."[2]

Over the next several years, the immigration judge twice found Heaven subject to removal and ineligible for cancellation

---

[1]  The INS ceased to exist on March 1, 2003, when its functions were transferred to the Department of Homeland Security ("DHS").

[2]  The INS also charged that Heaven was subject to removal under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which permits deportation of aliens who are convicted of an aggravated felony.  However, in a decision rendered on December 17, 2001, the BIA determined that Heaven's February 11, 1998, conviction was not a felony.

of removal, only to have the case reversed and remanded by the BIA for reasons not relevant to the instant petition. On March 24, 2003, Heaven submitted an application for cancellation of removal pursuant to INA § 240A, 8 U.S.C. § 1229b, which permits the Attorney General to cancel the removal of a deportable alien in certain circumstances. The DHS (formerly INS) then asserted that between August 28, 1991, and September 13, 1992, Heaven had been convicted of misdemeanor drug offenses in New York on five occasions--four for criminal possession of marijuana and once for criminal sale of marijuana. Heaven denied these allegations, and the DHS withdrew its claim regarding one of the convictions.

On September 3, 2003, the immigration judge found that the DHS proved that Heaven was convicted of possession of marijuana on November 16, 1991, August 3, 1992, and September 13, 1992, and the criminal sale of marijuana on March 8, 1992. The immigration judge then determined that Heaven was ineligible for cancellation of removal because, under the stop-time rule, Heaven's 1991 and 1992 convictions prevented him from having the seven years of continuous residence in the United States necessary for cancellation of removal. See 8 U.S.C. § 1229b(a)(2) (requiring seven years of continuous residence in the United States to be eligible for cancellation of removal); id. § 1229b(d)(1) (stating that period of continuous residence ends when the alien commits certain deportable offenses).

Heaven appealed to the BIA, contending that application of

3

the stop-time rule was impermissibly retroactive, as the rule was not enacted until 1996, after Heaven had received his convictions.  On January 21, 2004, the BIA dismissed Heaven's appeal, holding that the stop-time rule should be applied retroactively to Heaven's pre-1996 convictions.  Heaven then filed a petition for habeas corpus in the United States District Court for the Eastern District of New York on April 7, 2004, seeking review of the BIA's order.  On October 28, 2005, the district court transferred the habeas petition to this court pursuant to the REAL ID Act of 2005 ("REAL ID Act"), Pub. L. No. 109-13, 119 Stat. 231, 310-11, § 106(c) (2005).[3]  See also 8 U.S.C. § 1252(a)(5) (making a petition for review in the court of appeals the sole and exclusive means for review of an order of removal).  The parties have briefed the issues, and we now turn to the merits of our decision.

## II.  JURISDICTION AND STANDARD OF REVIEW

Section 106(c) of the REAL ID Act authorizes us to treat Heaven's petition for habeas corpus as a petition for review, and this court has jurisdiction to review constitutional claims and questions of law raised in a petition for review.  See 8 U.S.C. § 1252(a)(2)(D).  We give deference to the BIA's interpretation of the INA under the principles of Chevron U.S.A., Inc. v.

---

[3]  Heaven's removal proceedings took place in Louisiana; therefore, venue is appropriate in this court pursuant to 8 U.S.C. § 1252(b)(2).

4

<u>Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).

See also <u>James v. Gonzales</u>, 464 F.3d 505, 508 (5th Cir. 2006) ("We accord substantial deference to the BIA's interpretation of the INA itself and definitions and phrases within it . . . ." (internal quotation marks and citation omitted)).  However, we review de novo claims of constitutional error, such as due process violations, in immigration proceedings.  <u>Ali v. Gonzales</u>, 440 F.3d 678, 681 (5th Cir. 2006) (per curiam); <u>Anwar v. INS</u>, 116 F.3d 140, 144 (5th Cir. 1997).

## III.  DISCUSSION

Heaven raises three issues on appeal: (1) whether the stop-time rule should have been applied retroactively to his 1991 and 1992 convictions; (2) whether he should be permitted to simultaneously apply for § 212(c) relief; and (3) whether res judicata and collateral estoppel bar consideration of his 1991 and 1992 convictions.  The Government contends that Congress intended the stop-time rule to be applied retroactively and that this court lacks subject matter jurisdiction over Heaven's other claims because he failed to exhaust his administrative remedies. We first consider the application of the stop-time rule to Heaven's case.

A.   <u>Retroactive Application of the Stop-Time Rule</u>

On appeal, Heaven does not contend that he is not subject to removal on the basis of his February 11, 1998, conviction.

Instead, Heaven argues that the immigration judge and the BIA erred in determining that he was ineligible for cancellation of removal on the basis of the stop-time rule.

The cancellation of removal procedure was created in 1996 when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). As the procedure currently stands,

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--
>
>> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>>
>> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>>
>> (3) has not been convicted of any aggravated felony.

INA § 240A(a), 8 U.S.C. § 1229b(a). The IIRIRA further added a limitation on the continuous residence requirement in the second prong of the cancellation of removal criteria as follows:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

INA § 240A(a), 8 U.S.C. § 1229b(d)(1). This is known as the stop-time rule.

In this case, the BIA found that the stop-time rule applied

to Heaven's 1991 and 1992 convictions.  Because Heaven entered the United States in 1986 and committed drug offenses in 1991 and 1992 that rendered him deportable under 8 U.S.C. § 1227(a)(2), his period of continuous residence in the United States ended after only five years pursuant to the stop-time rule.  Therefore, the BIA reasoned that Heaven was ineligible for cancellation of removal because he did not have seven years of continuous residence.

Heaven, however, argues that his convictions for the drug offenses in 1991 and 1992 did not render him ineligible for cancellation of removal at that time because the stop-time rule was not enacted until 1996.[4]  Therefore, he contends that the BIA's application of the stop-time rule to his convictions is impermissibly retroactive and violates his due process rights under the United States Constitution.

### 1.    Retroactive Application of Statutes

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence . . . ."  Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).  Indeed, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their

---

[4]  Before the IIRIRA was enacted in 1996, the cancellation of removal procedure was known as "suspension of deportation." INA § 244, 8 U.S.C. § 1254 (now repealed).  The suspension of deportation procedure required seven years of continuous residence, but did not contain a stop-time rule.  Id.

conduct accordingly . . . ." Id. However, retroactive legislation is not, per se, unenforceable. See INS v. St. Cyr, 533 U.S. 289, 316 (2001) ("[I]t is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect.").

The Supreme Court has set out a two-part test to determine when it is permissible to apply a statute retroactively. Margolies v. Deason, 464 F.3d 547, 551 (5th Cir. 2006) (citing Landgraf). The first step is to "ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." St. Cyr, 533 U.S. at 316 (citing Martin v. Hadix, 527 U.S. 343, 352 (1999)); see also Landgraf, 511 U.S. at 280 (stating "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach"). Such a requirement ensures that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness. Landgraf, 511 U.S. at 268. Congressional intent must be an "unambiguous directive"; therefore, the existence of plausible alternative explanations for statutory language means that the first part of the test cannot be satisfied. See Margolies, 464 F.3d at 552 (citing Lindh v. Murphy, 521 U.S. 320, 329 n.4 (1997)).

If the statute contains no express command from Congress that it be applied retroactively, we move to the second step in the analysis and determine whether application of the new statute

would have an impermissible retroactive effect. Landgraf, 511 U.S. at 280. This entails a determination of whether retroactive application of the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Stated differently, we must ask whether the statute attaches new legal consequences to events completed before its enactment. Id. at 269-70. If the statute does, we apply the traditional presumption against retroactivity. Id. at 280.

The Supreme Court discussed the retroactive application of a provision of the IIRIRA in INS v. St. Cyr, 533 U.S. 289 (2001), a case on which Heaven relies. In St. Cyr, the Supreme Court considered whether the IIRIRA's repeal of § 212(c) of the INA should be applied retroactively. Under former § 212(c), the Attorney General had the discretionary authority to grant relief to an alien in deportation proceedings, as long as the alien had not been convicted of certain crimes. See id. at 295-97. The IIRIRA repealed § 212(c), replacing it with the cancellation of removal procedure described above. Id. at 297. The cancellation of removal procedure and related provisions expanded the types of crimes that prohibited the Attorney General from granting discretionary relief to aliens subject to deportation. See id.; see also 8 U.S.C. § 1229b(a)(3). Therefore, aliens who had pleaded guilty to certain crimes before 1996 with the expectation

9

that they would remain eligible for § 212(c) relief were no longer permitted to seek relief by way of cancellation of removal because of their convictions.

The Supreme Court held that the repeal of § 212(c) was not retroactive. St. Cyr, 533 U.S. at 326. In so holding, the Supreme Court first determined that Congress had not clearly indicated that the repeal of § 212(c) was to be retroactive. See id. at 316-20. In its analysis of Congress's intent, the Supreme Court contrasted Congress's silence on the retroactivity of the repeal with other portions of the IIRIRA in which Congress was clear that retroactive application was intended. Id. at 318-20. For example, the IIRIRA's amended definition of "aggravated felony" clearly stated it was to apply to "conviction[s] . . . entered before, on, or after" the statute's enactment date. Id. at 319-20 (citing IIRIRA § 321(b)); see also id. at 319 n.43 (listing numerous examples of statements of congressional intent that portions of the IIRIRA be applied retroactively). Finding no clear congressional intent that the repeal of § 212(c) should be retroactively applied, the Supreme Court then determined in the second step of the retroactivity analysis that a retroactive application would change the legal consequences of the aliens' guilty pleas to their detriment. See id. at 321-325. Therefore, the Court held that the repeal of § 212(c) could not be retroactively applied. Id. at 326.

10

Although St. Cyr is not binding precedent with respect to the stop-time rule, as St. Cyr dealt with a different provision of the IIRIRA, its analysis does counsel us to examine closely the language of the IIRIRA in determining Congress's intent.

## 2. Determining Congress's Intent

Section 309(a) of the IIRIRA provides that, in general, the provisions of the IIRIRA "shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment" of the IIRIRA. Therefore, although the IIRIRA was enacted on September 30, 1996, its provisions did not take effect until April 1, 1997. Section 309(c)(1) of the IIRIRA states that, subject to a few exceptions, the amendments made by the IIRIRA do not apply to aliens whose deportation proceedings were pending as of April 1, 1997.

An exception to this general rule is found in § 309(c)(5) of the IIRIRA, which speaks to the retroactive application of the stop-time rule. Specifically, § 309(c)(5) of the IIRIRA states:

> TRANSITIONAL RULE WITH REGARD TO SUSPENSION OF DEPORTATION.--Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

Paragraph 1 of § 240A(d) is the stop-time rule. In 1997, Congress amended § 309(c)(5) when it passed the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2160, 2196 (1997). Section 203(a) of the

11

NACARA substituted "orders to show cause" for "notices to appear" in § 309(c)(5) of the IIRIRA.[5]  This amendment came in response to confusion caused by the use of the phrase "notices to appear" in § 309(c)(5), because prior to the IIRIRA's enactment in 1996, the Government did not use notices to appear, but instead used orders to show cause.  Rojas-Reyes v. INS, 235 F.3d 115, 120 (2d Cir. 2000).  Aliens in deportation proceedings initiated before the IIRIRA was enacted began to argue that they were not subject to § 309(c)(5) because their proceedings were initiated with orders to show cause.  Peralta v. Gonzales, 441 F.3d 23, 27 (1st Cir. 2006).  The amendment by the NACARA put an end to those arguments.  See id.

This court has previously determined that the transitional rule found in § 309(c)(5) requires the retroactive application of § 240A(d) to cases that were pending at the time the IIRIRA took effect.  Gonzalez-Torres v. INS, 213 F.3d 899, 902-03 (5th Cir. 2000).  Many other circuit courts have reached the same conclusion.  See Peralta, 441 F.3d at 30-32; Suassuna v. INS, 342 F.3d 578, 582-83 (6th Cir. 2003); Ram v. INS, 243 F.3d 510, 516 (9th Cir. 2001); Pinho v. INS, 249 F.3d 183, 188-90 (3d Cir. 2001); Angel-Ramos v. Reno, 227 F.3d 942, 947 (7th Cir. 2000); Afolayan v. INS, 219 F.3d 784, 788 (8th Cir. 2000); Rivera-Jiménez v. INS, 214 F.3d 1213, 1217 (10th Cir. 2000) (per

_____

[5]  The NACARA added some further provisions to § 309(c)(5), none of which are relevant to this case.

12

curiam); <u>Tefel v. Reno</u>, 180 F.3d 1286, 1302 (11th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1228 (2000). Heaven's removal proceedings, however, did not commence until after the IIRIRA was enacted and became effective. Therefore, this case presents a slightly different question from the one addressed by the cases listed above--specifically, whether the retroactive requirement in the transitional rule also applies to immigration proceedings commenced after the effective date of the IIRIRA, as those cases do not fall under the transitional rule.

In its order on Heaven's appeal, the BIA referred to its decision in <u>In re Perez</u>, 22 I & N Dec. 689 (BIA 1999). In <u>Perez</u>, the BIA held that the stop-time rule does apply retroactively in proceedings that were initiated by way of a notice to appear after the effective date of the IIRIRA. <u>Id.</u> at 691. Pursuant to the principles of <u>Chevron</u>, we subject the BIA's decision to a deferential review. See <u>Chevron</u>, 467 U.S. at 842-43. We first ask whether Congress has spoken directly to the precise question at issue. <u>Id.</u> at 842; <u>Malagon de Fuentes v. Gonzales</u>, 462 F.3d 498, 502 (5th Cir. 2006). If Congress's intent is clear, the BIA and this court must give effect to that intent. <u>Chevron</u>, 467 U.S. at 842-43; <u>Malagon</u>, 462 F.3d at 502. If, however, the statute is silent or ambiguous with respect to the specific issue, we ask only whether "the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843; <u>Malagon</u>, 462 F.3d at 502.

13

Here, Congress stated that the stop-time rule should be retroactively applied to cases pending at the time the IIRIRA became effective.  As held by the Ninth Circuit in Garcia-Ramirez v. Gonzales, it would be "incongruous," then, to not apply the same rule to aliens whose proceedings were initiated after the effective date of the IIRIRA.  423 F.3d 935, 941 (9th Cir. 2005) (per curiam).  The Ninth Circuit is the only circuit so far to consider whether the transitional rule applies to removal proceedings that were begun after the effective date of the IIRIRA.[6]  In Garcia-Ramirez, the Ninth Circuit dealt with paragraph (2) of INA § 240A(d), which states that an alien's physical presence in the United States is deemed to end if the alien "has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days" (the "90/180 rule").  423 F.3d at 937.  There, the court applied the 90/180 rule retroactively to deny cancellation of removal to an alien who left the United States for five months in 1989.  Id.

Because Congress has spoken directly to the question at issue in this case, we need not proceed further with the Chevron deference analysis.  Therefore, we now join the Ninth Circuit in holding that § 309(c)(5) requires the retroactive application of

---

[6]  The Third Circuit has also applied the stop-time rule retroactively, but did so without any discussion.  See Okeke v. Gonzales, 407 F.3d 585, 588 (3d Cir. 2005).

§ 240A(d) in removal proceedings commenced after the effective date of the IIRIRA.  Because Congress has clearly conveyed its intent that the stop-time rule be retroactively applied, we do not reach the second step in the retroactivity analysis.

### 3.  Heaven's Arguments

Heaven relies on several district court cases in support of his position that the stop-time rule should not be retroactively applied.  One such case is Henry v. Ashcroft, 175 F. Supp. 2d 688 (S.D.N.Y. 2001), which held that the stop-time rule may not be applied retroactively to removal proceedings commenced after the enactment of the IIRIRA.  Id. at 696.  The district court in Henry based its decision on the proposition that § 309(c)(5) only applies to proceedings that were currently pending at the time the IIRIRA was enacted.  See id. at 694.  Therefore, according to the district court, Congress was silent or unclear as to whether the stop-time rule should be applied to proceedings that began after the IIRIRA was enacted.  Id.  This rationale, however, was rejected by the Ninth Circuit in Garcia-Ramirez, which saw no reason why § 240A(d) should be applied retroactively to cases pending at the time the IIRIRA became effective but not to those brought after the effective date. 423 F.3d at 941.  We agree with the reasoning of the Ninth Circuit.

Heaven also cites an unpublished decision out of the Western District of Michigan that similarly rejected the retroactive

15

application of the stop-time rule.  Generi v. Ashcroft, No. 4:03-CV-15, 2004 WL 771138 (W.D. Mich. Apr. 13, 2004).  In Generi, the district court reasoned that the "orders to show cause" language in § 309(c)(5) meant that it only applied to the portion of the stop-time rule that stated that an alien's continuous residence ends when he is served with a notice to appear.[7]  Id. at **4-6 (noting that Congress did not state that the conviction prong of § 240A(d)(1) was to be applied retroactively).

The First Circuit dismissed such an argument in Peralta, which is a case brought under the transitional rules of the IIRIRA but is nonetheless correct in its analysis of this issue. As described by the First Circuit, paragraphs (1) and (2) of § 240A(d), to which § 309(c)(5) applies, create three different triggering events that cut off the accrual of an alien's continuous presence and residence in the United States: (1) service of a notice to appear; (2) commission of certain deportable crimes; and (3) violation of the 90/180 rule. Peralta, 441 F.3d at 31.  Limiting application of § 309(c)(5) to only the first triggering event (service of a notice to appear) renders the reference to paragraph (2) in § 305(c)(5) (the 90/180 rule) meaningless.  Id.  The First Circuit's reasoning is sound. We are to construe statutes to give effect to all words and

---

[7]  The portion of the stop-time rule referred to is paragraph (1) of § 240A(d), which stops the continuous residence of an alien "when the alien is served a notice to appear under section 1229(a) of this title . . . ."  8 U.S.C. § 1229b(d)(1).

16

phrases, if possible.  See Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("In construing a statute [courts] are obliged to give effect, if possible, to every word Congress used."); see also Kaltenbach v. Richards, 464 F.3d 524, 528 (5th Cir. 2006) (stating that a statute should be construed so that no clause, sentence, or word is superfluous, void, or insignificant). Therefore, the Generi decision does not persuade us.

In sum, after review of § 309(c)(5) and other cases on point, we conclude that Congress has expressed its intent that the stop-time rule should be retroactively applied to convictions that arose before the IIRIRA was enacted and that the BIA's decision was not erroneous in that regard.

## 4.   Due Process Claim

In addition to claiming that Congress did not intend the stop-time rule to be retroactively applied, Heaven also asserts that the retroactive application violates his due process rights. Even if Congress has been clear that a statute should be applied retroactively, retroactive application of the statute may still be impermissible if it violates a constitutional provision.  See St. Cyr, 533 U.S. at 316 (noting that Congress may enact retrospective laws "within constitutional limits"); see also Landgraf, 511 U.S. at 267 (noting that "[a]bsent a violation of [a constitutional provision], the potential unfairness of retroactive civil legislation is not a sufficient reason for a

17

court to fail to give a statute its intended scope").

This court has previously determined that the retroactive application of the stop-time rule to proceedings that were currently pending when the IIRIRA was enacted does not violate the due process clause. Gonzalez-Torres, 213 F.3d at 902-03; see also Rojas-Reyes, 235 F.3d at 121-24 (holding that retroactive application of the stop-time rule to proceedings pending when the IIRIRA was enacted does not violate substantive or procedural due process rights). There is no reason to treat the due process analysis any differently simply because Heaven's removal proceedings did not begin until after the IIRIRA was enacted.

Consequently, the BIA's decision that the stop-time rule applies retroactively to Heaven's 1991 and 1992 convictions does not violate Heaven's due process rights. Therefore, the BIA was correct in determining that Heaven was ineligible for cancellation of removal because he lacked the requisite seven years of continuous residence.

B.   Heaven's Other Arguments on Appeal

Heaven also argues that (1) the BIA erred by not considering whether he could apply for § 212(c) relief at the same time he applied for cancellation of removal; and (2) the principles of res judicata and collateral estoppel should have prevented the Government from raising his 1991 and 1992 convictions over two years after the removal proceedings had been initiated. The Government contends that this court does not have subject matter

18

jurisdiction over these claims because Heaven did not exhaust his administrative remedies with respect to these arguments.

Pursuant to 8 U.S.C. § 1252(d), "[a] court may review a final order of removal only if--(1) the alien has exhausted all administrative remedies available to the alien as of right . . . ."  As interpreted by this court, failure to exhaust an issue creates a jurisdictional bar on appeal.  <u>Roy v. Ashcroft</u>, 389 F.3d 132, 137 (5th Cir. 2004) (per curiam).  "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA--either on direct appeal or in a motion to reopen."  <u>Wang v. Ashcroft</u>, 260 F.3d 448, 452-53 (5th Cir. 2001).

Here, Heaven asserts in both his habeas corpus petition and petition for review before this court that the BIA erred when it did not consider whether he could simultaneously apply for § 212(c) relief as well as for cancellation of removal.  As noted above, § 212(c) permits the Attorney General to waive deportation for an alien, as long as the alien has not been convicted of certain crimes.  <u>See</u> <u>St. Cyr</u>, 533 U.S. at 295-97.  Heaven argues before this court that the BIA's decision in <u>In re Gabryelsky</u>, 20 I & N Dec. 750 (BIA 1993), permits him to simultaneously apply for § 212(c) relief as well as for cancellation of removal.  The Government is correct, however, that Heaven did not raise this issue before the BIA.  Heaven's appeal to the BIA makes no mention of his eligibility for § 212(c) relief or the <u>Gabryelsky</u>

19

decision.  Consequently, Heaven did not exhaust his administrative remedies with respect to this claim, and we lack jurisdiction to entertain it on appeal.[8]

Similarly, Heaven did not raise his argument regarding res judicata and collateral estoppel before the BIA.  Therefore, pursuant to 8 U.S.C. § 1252(d)(1), we lack jurisdiction over this claim as well.

## IV.  CONCLUSION

Because the BIA did not err in applying the stop-time rule retroactively to Heaven's 1991 and 1992 convictions and because we lack jurisdiction over Heaven's other claims, we DENY Heaven's petition for review in part and DISMISS it in part.

DENIED in part and DISMISSED in part.

---

[8]  We make no comment as to whether Heaven would be eligible for § 212(c) relief.