# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0114
════════════

STATE OF TEXAS, PETITIONER,

v.

ANGELIQUE NAYLOR AND SABINA DALY, RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
════════════════════════════════════════════

*- consolidated with -*

════════════
No. 11-0222
════════════

IN RE STATE OF TEXAS, RELATOR

════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
════════════════════════════════════════════

JUSTICE DEVINE, dissenting.

I fully join JUSTICE WILLETT's dissent and agree that the State could intervene. But resolving this case, which concerns a trial court's grant of a divorce to a same-sex couple, requires reaching additional issues. Texas law recognizes only traditional, heterosexual marriages, and I would hold that it divests state courts of subject-matter jurisdiction over same-sex divorce proceedings. The

traditional concept of marriage, which the State intervened to protect, does not violate the United States Constitution. Though this issue is pending before the Supreme Court of the United States,[1] I here present my own opinion, for the issue is one that must be reached to dispose of the case.

## I. What is Marriage, and Divorce, in Texas?

Angelique Naylor and Sabina Daly, who obtained a marriage license under Massachusetts law, were granted a divorce by a Texas trial court. Only a party to a valid marriage may seek a divorce in Texas. *See* TEX. FAM. CODE §§ 6.001–.008 (pertaining to divorce). In other words, to obtain a divorce, parties must first be married. Under the Texas Constitution, "marriage" "consist[s] only of the union of one man and one woman." TEX. CONST. art. I, § 32(a). The Texas Constitution further prohibits the state from "creat[ing] or recogniz[ing] any legal status identical or similar to marriage." TEX. CONST. art. I, § 32(b). The Family Code also makes same-sex marriages void in Texas and prohibits the state or any political subdivision from recognizing or giving effect to any right or claim asserted as a result of such a marriage. TEX. FAM. CODE § 6.204(b)–(c). This does not leave the parties to an invalid marriage without recourse, for a party to an invalid marriage may have it declared void through an *in rem* proceeding. *See id.* § 6.307 (pertaining to void marriages).

Accordingly, Texas law prohibited the trial court from granting a divorce to Naylor and Daly, for Texas does not recognize them as married, and there can be no divorce without a marriage. What is more, this prohibition deprived the trial court of subject-matter jurisdiction over the divorce case.[2]

---

[1] *See Obergefell v. Hodges*, No. 14-556 (U.S. argued Apr. 28, 2015).

[2] *See In re Marriage of J.B. & H.B.*, 326 S.W.3d 654, 670 (Tex. App.—Dallas 2010, pet. dism'd) ("Texas courts lack subject-matter jurisdiction to entertain a suit for divorce that is brought by a party to a same-sex marriage, even if the marriage was entered in another state that recognizes the validity of same-sex marriages."); *Mireles v. Mireles*, No.

Texas law prohibits the "state or an agency or political subdivision of the state" from "giv[ing] effect to a . . . public act, record, or judicial proceeding that creates, recognizes, or validates a marriage between persons of the same sex." TEX. FAM. CODE § 6.204(c)(1). And Texas law allows a court to grant a divorce only to married couples. In other words, the right of access to a divorce proceeding is based on being married. Otherwise, the very existence of the legal proceeding would give some effect to the same-sex marriage—a result forbidden by Texas law. Where there is, by definition, no cognizable marriage under Texas law, there can be no jurisdiction to adjudicate a divorce proceeding.

In this case, the trial court overstepped the bounds of its jurisdiction under the Texas Constitution and state law when it granted a divorce to Naylor and Daly.

## II. Does the U.S. Constitution Allow Texas to Adhere to the Traditional Definition of Marriage (and Divorce)?

Naylor and Daly assert that this statutory and constitutional scheme is unconstitutional—that the United States Constitution requires Texas to grant divorces to same-sex couples married in other states. They assert that Texas law violates the Equal Protection Clause and the Due Process Clause, as well as the Full Faith and Credit Clause and the right to travel. I firmly believe that the state laws confirming Texas' commitment to traditional marriage do not violate the United States Constitution.[3]

---

01-08-00499-CV, 2009 WL 884815, at *2 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (mem. op.) ("A Texas court has no more power to issue a divorce decree for a same-sex marriage than it does to administer the estate of a living person.").

[3] Even within the past year, some federal courts have concluded that the U.S. Constitution does not condemn the historical definition of marriage. *See DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *cert. granted sub nom.*, *Obergefell v. Hodges*, 135 S. Ct. 1039 (2015); *Conde-Vidal v. Garcia-Padilla*, 54 F. Supp. 3d 157 (D.P.R. 2014); *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910 (E.D. La. 2014). *But see, e.g.*, *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014), *petitions for cert. filed* (U.S. Dec. 30, 2014, Jan. 2, 2015, Apr. 9, 2015) (Nos. 14-765, 14-788, 14-1214); *Baskin v.*

3

A.  Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  This protection extends to claims for both substantive and procedural due process.  The former protects certain unnamed fundamental rights, and the latter guarantees fair legal procedures before the state deprives a citizen of life, liberty, or property.

*1.  Substantive Due Process*

The Due Process Clause has been held to protect certain fundamental rights, including the right to marry.  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  The United States Supreme Court has also recognized the importance of the right to divorce.  In *Williams v. North Carolina*, the Court stated that divorce "touches basic interests of society." 325 U.S. 226, 230 (1945).  In *Boddie v. Connecticut*, however, the Court made clear that it is the fundamental nature of *marriage* that makes divorce important.  401 U.S. 371, 374, 376 (1971).  In other words, there is no stand-alone right to a divorce; the right to divorce is predicated on being married.  Naylor and Daly have no right to a divorce unless they also have a right under the U.S. Constitution to be married.

Does the Due Process Clause require Texas to allow same-sex marriages?  In 1967, the United States Supreme Court declared marriage to be a fundamental right.  *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  In *Loving*, the Court stated:

*Bogan*, 766 F.3d 648 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 316 (2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 308 (2014); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 265 (2014).

4

>The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.
>
>Marriage is one of the "basic civil rights of man," fundamental to our very existence and survival. . . . Under our Constitution, the freedom to marry, or not marry, a person of another race resides with the individual and cannot be infringed by the State.

*Id.* But acknowledging this right does not answer the question—it begs it: *what is it to "marry"? (or to divorce?)* Does the Constitution prohibit Texas from limiting marriage to a man and a woman?

At this point, I pause to note what this case is not about. It does not concern state laws limiting access to marriage based on parties' personal characteristics that, under any proposed definition of marriage, are irrelevant to whether the marriage is actually a marriage. Contrast, for example, *Loving v. Virginia*, where the Supreme Court held that the Due Process Clause prohibited a state ban on interracial marriages. 388 U.S. at 12.[4] But here, the issue is quite different: Texas does not restrict access to what has traditionally been viewed as a marriage (or as a divorce, for that matter). Rather, Texas has defined the very nature of marriage (and divorce) itself, establishing it as a union (or, for divorce, as a dissolution of a union) between a man and a woman. This case is also not like cases upholding the right to certain forms of sexual conduct. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) ("The present case . . . does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter."). The Texas laws at issue merely define marriage (and divorce).

---

[4] As the Sixth Circuit explained, "*Loving* addressed, and rightly corrected, an unconstitutional eligibility requirement for marriage; it did not create a new definition of marriage." *DeBoer*, 772 F.3d at 411.

5

The U.S. Supreme Court, while striking down section 3 of the Defense of Marriage Act, expressly recognized that "[b]y history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States." *United States v. Windsor*, 133 S. Ct. 2675, 2689–90 (2013). States have almost exclusive authority to regulate domestic relations as long as they do not disregard constitutional rights. *Id.* at 2691. Notably, the Supreme Court's decision in *Windsor* was based not on a constitutional right to same-sex marriage, but on a conclusion that once states do authorize same-sex marriage, it is not the *federal* government's role to stand in the way. *See id.* at 2693 ("DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage here operates to deprive same-sex couples of the benefits and responsibilities that come with the federal recognition of their marriages."). Thus, it is within Texas' power to define marriage and divorce, unless doing so violates constitutional rights.

And I believe the Due Process Clause does not create such a fundamental right to same-sex marriage. "[E]xamining our Nation's history, legal traditions, and practices,"[5] the idea of same-sex marriage is relatively recent. Marriage between a man and a woman has long existed, and is indeed fundamental, but there is little precedent beyond the past few years for same-sex marriage. Where, as here, same-sex marriage is not rooted in our nation's history and tradition, and states have always

---

[5] *Glucksberg*, 521 U.S. at 710; *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006) ("To establish a substantive due process violation, a plaintiff must first both carefully describe that right and establish it as 'deeply rooted in this Nation's history and tradition.' [*Glucksberg*, 521 U.S. at 720–21]. If the right is so deeply rooted—if it is fundamental—we subject it to more exacting standards of review. If it is not, we review only for a rational basis.").

had almost exclusive authority to define marriage, I cannot see that there would be a fundamental right to same-sex marriage.

Indeed, were there a fundamental right to marriage beyond its traditional, heterosexual bounds, the demands of strict scrutiny would upend many aspects of our marriage laws. Consider, for example, section 6.201 of the Family Code, which voids marriages between certain close relatives. The State's apparent interest is preventing the genetic consequences of inbreeding. But if the right to marriage is not limited to opposite-sex relationships which, at least in the abstract, are capable of procreation, would the State's interest in these consanguinity provisions apply to same-sex marriages? Or would these provisions fail (at least when applied to same-sex couples) for being overinclusive, not narrowly tailored? *See Reno v. Flores*, 507 U.S. 292, 305 (1993) (stating that strict scrutiny requires narrow tailoring). What of provisions voiding marriages between a stepchild and stepparent? *See* TEX. FAM. CODE § 6.206. Even in a heterosexual relationship between an adult stepchild and stepparent, there is little risk of genetic harm to their offspring because of inbreeding. Surely this restriction too would fail if the right to marry exceeds the bounds of tradition.

In sum, I cannot conclude that a fundamental right to same-sex marriage exists. If the right to marry exceeds what is recognized by our history, legal traditions, and practices, then what are its limits? Surely this is a matter properly within the Legislature's discretion. Accordingly, I would apply rational basis review to the Texas laws limiting marriage to one man and one woman. This is discussed below following the Equal Protection analysis.

## 2. Procedural Due Process

The United States Supreme Court has previously addressed the importance of the right to divorce in the context of procedural due process. In *Boddie v. Connecticut*, the appellants lacked access to the courts and were denied any means of dissolving their marriages. This was unconstitutional because "persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." 401 U.S. at 377. The Court held that process was required to allow individuals to "mutually liberate themselves from the constraints of legal obligations that go with marriage." *Id.* at 376. However, the Court stated, "The legitimacy of the State's monopoly over techniques of final dispute settlement, even where some are denied access to its use, stands unimpaired where recognized, effective alternatives for the adjustment of differences remain." *Id.* at 375–76. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* at 378.

Here, parties to a void marriage may sue to have the marriage declared void under the Family Code. TEX. FAM. CODE § 6.307. Though voidance procedures do not afford the same benefits as divorce, they offer process and are an effective alternative to divorce procedures. They allow for the settlement of property disputes, the attachment of suits affecting the parent-child relationship (SAPCRs), and other legal process incidental to the dissolution of a purported marriage. By providing for the "adjustment of differences" following a marriage valid in another jurisdiction, voidance procedures allow for a meaningful opportunity to be heard. Therefore, I conclude that the

8

voidance procedures outlined in Chapter 6 of the Texas Family Code provide adequate procedural protections as *Boddie* requires.

## B. Equal Protection

The Fourteenth Amendment's Equal Protection Clause prohibits each state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The United States Supreme Court has clarified that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Naylor and Daly argue that construing Texas law to bar jurisdiction treats same-sex couples differently from opposite-sex couples. The State responds that homosexual persons are not a suspect class, and that Texas law is rationally related to a legitimate government purpose.

### 1. Level of Constitutional Scrutiny

"When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment." *Zobel v. Williams*, 457 U.S. 55, 60 (1982). A law will generally survive that scrutiny if the distinction rationally furthers a legitimate state purpose. *Id.* There are times, however, when strict scrutiny is warranted. For example, in *Shapiro v. Thompson*, the United States Supreme Court held that reserving benefits to one group based solely upon residency requirements constituted invidious discrimination for which the government interests were not compelling. 394 U.S. 618, 627, 633–34 (1969). Here, then, to determine the constitutionality of the historical take on marriage, it is first necessary to determine the level of review.

9

In *Windsor v. United States*, the Second Circuit classified gays and lesbians as a "quasi-suspect class," requiring the government to prove that the Defense of Marriage Act was substantially related to furthering an important government interest. 699 F.3d 169, 185 (2d Cir. 2012). But on appeal, the Supreme Court relied on animus to invalidate DOMA; Congress could not act out of a bare desire to injure a particular group. *See United States v. Windsor*, 133 S. Ct. at 2693–94. Similarly, in *Romer v. Evans*, 517 U.S. 620 (1996), the Supreme Court examined an amendment to the Colorado Constitution that prohibited legislative, judicial, or executive protection of gays and lesbians. The Court invalidated the law relying not on a higher level of scrutiny, but on a finding of animus. *Id.* at 631, 635. This was "merely an application of the usual rational-basis test." *See Lyng v. Int'l Union*, 485 U.S. 360, 370 n.8 (1988). The Court held the laws had no legitimate objective and were accordingly unconstitutional. Importantly, however, the Supreme Court did not identify homosexuals as a suspect class or apply heightened scrutiny to laws targeting them. Similarly, I would test state laws limiting marriage to one man and one woman for whether they are rationally related to a legitimate state interest.

### 2. Rational-Basis Review

When laws create a classification scheme without burdening a fundamental right or targeting a suspect class, the laws are "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440; *see also Romer*, 517 U.S. at 631. Here, the State's stated purpose is "to encourage stable family environments for procreation and the rearing of children by a mother and a father." The United States Supreme Court has long recognized the importance of marriage and procreation, declaring

10

them "fundamental to the very existence and survival of the race." *Skinner v. State of Okla. ex rel. Williamson*, 316 U.S. 535, 541 (1942); *see also Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973) (stating fundamental privacy right "encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing"). If these rationales are "fundamental," then there is no doubt they are legitimate.

These interests rationally relate to limiting divorce to those who have entered into a marriage recognized as valid by the Texas Constitution and the Texas Family Code. Two people cannot "divorce" without first being "married." To grant the divorce is to acknowledge the marriage, and to acknowledge that two people of the same sex can be married is to undermine the State's interest in preserving the traditional definition of marriage—that of furthering stable family environments for procreation and the rearing of children by a mother and a father.

In effect, Naylor and Daly invoke the Equal Protection Clause to redefine what divorce is. Yet, if "[b]y history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States," *Windsor*, 133 S. Ct. at 2689–90, then surely the meaning of divorce is as well. The State's concept of divorce (and marriage) does not refuse to "treat like cases alike," but instead declares traditional marriage and same-sex marriage to be by their very natures "unlike." *Cf. Vacco v. Quill*, 521 U.S. 793, 799 (1997) ("[The Equal Protection Clause] embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."). In light of the State's interest in procreation and the raising of children by a mother and a father, this difference is apparent. Indeed, other laws (and commonly accepted ones) restrict marriage based on the assumption that it involves two persons capable, at least in the

11

abstract, of procreation. Laws voiding marriages between certain close relatives, *see* TEX. FAM. CODE § 6.201, prove this point. The State has advanced certain policy decisions, and it is not for the judiciary to second-guess them. Rather, the judiciary need only find that the State's choice—the result of the democratic process—is within the broad range of options allowed by the U.S. Constitution.

The State's concept of divorce (and marriage) does not withhold access based on a protected status to what the people of Texas have defined as a valid marriage. The State's concept of divorce (and marriage) is not motivated by animus toward a particular group; it is based on a historical understanding of what "marriage" actually is and how this fosters a healthy family environment for children. The State's concept of divorce (and marriage) does not deprive individuals of a fundamental right, for there has never been a fundamental right to marry someone of the same sex. And the State's approach to divorce is rationally related to preserving the traditional definition of marriage, which furthers the State's interest in fostering stable families where children are raised by a mother and a father. Whether the State's means of achieving its interest is wise or unwise is not a question for this Court, but for the people of this State, and they have spoken. I conclude that section 6.204 does not violate the Equal Protection Clause of the Fourteenth Amendment.

### C. Full Faith and Credit

Article IV, Section 1, of the United States Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST. art. IV, § 1. In this case,

Congress has clearly prescribed the effect of same-sex marriage laws in other states. Section 2 of the Defense of Marriage Act, which was not at issue in *Windsor*, provides:

> No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.

Defense of Marriage Act § 2(a), 28 U.S.C. § 1738C. Texas, therefore, is not required to "give effect to" Naylor and Daly's marriage in Massachusetts.

Furthermore, it would be against Texas state policy to recognize Naylor and Daly's same-sex marriage. In *Nevada v. Hall*, the Supreme Court recognized a public-policy exception to the Full Faith and Credit Clause to the extent Congress does not prescribe otherwise. 440 U.S. 410, 421–22 (1979) ("[T]his Court's decision in *Pacific Insurance Co. v. Industrial Accident Comm'n,* 306 U.S. 493, clearly establishes that the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy."). When it comes to same-sex marriage, Congress has not prescribed otherwise; indeed, it has specifically endorsed states' rights to not give effect to same-sex marriages formed in other states.

In *Castilleja v. Camero*, a lottery-proceeds case, we outlined the "test for refusing to enforce a right lawfully arising in another jurisdiction":

> To justify a court in refusing to enforce a right of action which accrued under the laws of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other reason the enforcement of it would be prejudicial to the general interests of our own citizens.

414 S.W.2d 424, 427 (Tex. 1967) (quoting *California v. Copus*, 309 S.W.2d 227, 232 (Tex. 1958)).

In this instance, the State has made clear that promoting the unions of opposite-sex couples is intended to benefit the citizens of Texas by encouraging procreation and child-rearing by both a mother and a father. To treat opposite-sex couples and same-sex couples the same would prejudice that aim. In other words, the *Castilleja* test is satisfied. As Congress has authorized Texas to not recognize same-sex marriages, and as Texas has a strong public policy against doing so, the Full Faith and Credit Clause is not violated. When marriage has one meaning in Massachusetts, and another in Texas, the Full Faith and Credit Clause does not require Texas to apply Massachusetts' definition to Naylor and Daly.

### D. Right to Travel

"[F]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *United States v. Guest*, 383 U.S. 745, 758 (1966). In *Attorney General of New York v. Soto-Lopez*, the Supreme Court held that "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses 'any classification which serves to penalize the exercise of that right.'" 476 U.S. 898, 903 (1986) (citations omitted) (internal quotation marks omitted). Naylor and Daly present no evidence that Texas law has deterred travel. Nor is there any evidence that the Legislature intended to deter travel by enacting section 6.204 of the Family Code, especially because it did not restrict the availability of voidance procedures. In addition, the State does not penalize same-sex couples for traveling to Texas; these couples are treated the same as same-sex couples native to the state. The State merely

14

seeks to preserve the traditional definition of marriage, applying this definition equally to individuals whether they migrated to Texas or not.

In *Saenz v. Roe*, the Supreme Court held:

> The "right to travel" discussed in our cases embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

526 U.S. 489, 500 (1999). Citizens of other states are welcome to freely travel into and out of Texas with the assurance that they will be treated no differently from Texas residents. I therefore conclude that section 6.204 does not violate the right to travel.

* * *

I conclude that the underlying divorce suit attacks the validity of our constitutional and statutory prohibition on same-sex marriage. I further conclude that the trial court is prohibited by state law from granting a divorce in this case and can only void the marriage or dismiss the case. I finally conclude that Texas law declaring same-sex marriages void does not violate the federal Constitution. I would accordingly reverse the judgment of the court of appeals and remand to the trial court for further proceedings consistent with these conclusions. Because the Court does not, I respectfully dissent.

_____

John P. Devine
Justice

Opinion Delivered: June 19, 2015